UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

JUDGE SULLIVAN


<u>COMPLAINT – ACTION FOR DAMAGED FOR PROPERTY RIGHTS INFRINGMENT</u>

CIVIL ACTION NO: 15CV-1862 RJS


```
-------------------------------------------------------------------------X
MALIBU MEDIA, LLC,                                  :
                            Plaintiff               :
                                                    :
Vs.                                                 :
                                                    :
JOHN DOE subscriber assigned IP address: 108.41.235.16  :
                                                    :
                            Defendant               :
-------------------------------------------------------------------------X
```


DEFENDANT RESPECTFULLY REQUESTS RECONSIDERATION OF ORDER PERMITTING PLAINTIFF'S MOTION FOR LEAVE OF RULE 16 AND 26 CONFERENCES:



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6 30 15

TABLE OF CONTENTS:

DEFENDANT RESPECTFULLY REQUESTS RECONSIDERATION OF ORDER PERMITTING PLAINTIFF'S MOTION FOR LEAVE OF RULE 16 AND 26 CONFERENCES:............................................................................3

LEGAL STANDARD:....................................................................................................................................4

FINDINGS: ...................................................................................................................................................5

PRE-TRIAL CONFERENCE QUESTIONS:....................................................................................................5

CONCLUSION: ............................................................................................................................................12

DEFENDANT RESPECTFULLY REQUESTS RECONSIDERATION OF ORDER PERMITTING
PLAINTIFF'S MOTION FOR LEAVE OF RULE 16 AND 26 CONFERENCES.

From the beginning, this entire case and any "evidence" presented up to this point did not seem
sufficient to bring a valid claim to the court.  As a the owner of a software company, the Defendant
would not have been so cavalier in presenting the "evidence" as fact nor requested any court time for
something this flimsy.  All this aside from the fact that in 3 years and at least 4032 lawsuits the Plaintiff
has not yet managed to secure their own copyrighted content or even any new content.  From a
business owner's perspective, this borders on negligence.

The Defendant, not being a lawyer, had no basis for this feeling other than a general understanding of
the court system and that the process should be kept as fair as possible for both parties to the point
where a decision could be rendered.  From the onset, the Defendant felt they needed to prove their
innocence without many available options, rather than the Plaintiff needing to actually prove a case.

After quite a bit of research and understanding some of the finer points of procedural law, the Plaintiff
apparently skipped several of the steps required before the Defendant is even involved, primarily a Rule
16 and/or Rule 26 conference among other pre-trial activities.  This was done with the permission of the
court and seems to be a theme with Malibu Media cases in general.  The problem with skipping these
steps is it does not afford the court the option of examining the "evidence" or any facts presented prior
to getting the Defendant involved which puts the Defendant at a distinct disadvantage, and the need to
expend needless resources, from the onset.

The Plaintiff claims they are requesting leave to serve a subpoena under rule 45 for the purposes of
gaining the identity of the John Doe.  There are two non-inconsequential problems with this method.

1. The subject matter of the case being pornographic in nature and the strong desire of any John Doe, innocent or not, to pay an early settlement to not be involved.  Allowing Malibu Media to proceed in this manner essentially sets up the Defendant for baseless extortion, and Malibu Media was named in at least one suit claiming RICO already. *Jennifer Barker vs. Malibu Media Case No. 3:12-cv-00372-CRS.*

2. Malibu Media historically never seems to proceed to a Rule 26 conference after obtaining the identification information through subpoena power.   The Defendant actively searched court websites and the internet at large attempting to find evidence to the contrary.  None was to be found, and even if there is evidence that the Defendant missed, it will be minor in comparison the vast amount of cases brought by Malibu Media to the federal courts.

As it turns out, the Ninth District, had a similar procedural problem with these BitTorrent cases and remedied the situation with the following legal standard outlining three simple rules.  They have been condensed and reformatted slightly with citations removed to make the methods easier to read.

## LEGAL STANDARD:

*Ingenuity 13 LLC vs. John Doe, Case No. 2:12-cv-08333-ODW-JC, Docket No. 48, Page 4 – 7 (citations omitted)*

*RULE 1. IN ORDER TO SUE A DEFENDANT FOR COPYRIGHT INFRINGEMENT, YOU MUST PROVE THAT THE DEFENDANT DOWNLOADED THE ENTIRE COPYRIGHTED VIDEO.*

*RULE 2. A "SNAPSHOT OBSERVATION" OF AN IP ADDRESS ENGAGED IN DOWNLOADING AT THAT MOMENT IS INSUFFICIENT PROOF OF COPYRIGHT INFRINGEMENT*

*RULE 3. BEFORE SUING A DEFENDANT FOR COPYRIGHT INFRINGEMENT, YOU MUST DO A "REASONABLE INVESTIGATION" TO DETERMINE THAT IT WAS THE NAMED DEFENDANT WHO DID THE DOWNLOAD, AND NOT SOMEONE ELSE WITH ACCESS TO HIS INTERNET CONNECTION.*

FINDINGS:

There are currently at least 198 Malibu Media open cases in the second district contrasted with only 4 open cases in the much larger ninth district.  The primarily reason appears to be that Malibu Media simply does not have the evidence they claim to have to justify a rule 45 subpoena.  This statement appears to be supported by a large amount of voluntary dismissals by the Plaintiff shortly following the ruling and no follow up cases since.  It further appears as though they just took their smoke and mirrors show on the road.

PRE-TRIAL CONFERENCE QUESTIONS:

Malibu Media clearly fails Rule 1 and Rule 2 as outlined in the legal standard before we even begin and should they be allowed to proceed to discovery they will fail Rule 3 as well.  However, if the court wishes to continue, it would be prudent in attempt to save taxpayer money to ask a few simple questions in addition to insuring compliance with the rules set forth by Judge Otis Wright, should the court find the legal standard and the Defendant's interpretation of that standard admissible.  They are as follows:

1. The Plaintiff asserts "they have tens of thousands of subscribers and they are finding it hard to grow and maintain memberships as so many people are finding our films for free." *Declaration of Colette Fields in support of Plaintiff's motion to take leave of Rule 26 conference.  Doc No. 9*

    a. Why in three years has Malibu Media not made any attempt to further secure new content?
    b. Is Malibu Media's choice to not further secure their new content in three years negligent?
    c. How are issuing all these lawsuits not using the court system as a business model?
    d. Where is the data to prove these lawsuits are not a significant portion of the Malibu Media business revenue?

The Defendant as a business owner questions the BitTorrent activity as the driving force to a flattening of growth and memberships of X-Art's legitimate business model. All successful business ventures see an initial growth phase followed by a plateau or downgrade of revenue. Without anything new to offer most business just fade into non-existence. It is at the inflection point of growth to plateau, ideally before, that most businesses diversify their product model into additional markets or new products entirely. The flattening of Malibu Media's growth curve could just simply be that the market is saturated with premium content, content that is similar or better to X-Art, and the idea presented by X-Art is no longer novel.

This point is further leveraged by questioning why Malibu Media feels that by going after these infringers that it will lead to an increase in their membership base. Even if it was not clear that this venture would work or not at the start, Malibu Media has been at this racket for over 3 years. There should be sufficient data available to prove this has appreciably increased the membership base, that these cases are not a significant revenue stream, and continuing to use taxpayer funded courts is the only or at least the most prudent method of proceeding.

Most businesses have found that these infringers are never going to be a paying member and to go after them is just a waste of time and resources. Instead, businesses typically invest in strengthening up their own internal security to insure any new product does not get released into the wild in the first place. The investment in Malibu Media's case is minor and very easy to implement. In a three year history of spot checking the torrent trackers, Malibu Media's time from release of their film on their site to the availability on a torrent is still about 3 hours, almost like clockwork. Further it appears that Malibu Media is inducing infringement in the first place. I'm sure Malibu Media will and has continued to adamantly deny inducing infringement even though the concept is not new, recall Prenda Law, and both companies used IPP/Guardaley/APCM (same company, different names) as their "evidence" generating

engine. Malibu Media will typically state something like "We're not Prenda" in an effort to distance themselves from that fiasco but the back end evidence gathering and approach to case litigation is similar enough that no statement from Malibu Media is sufficient to distance themselves.

More to the point of bringing lawsuits as a business model, in a New Yorker Article on May 14 2014, it states that membership has fallen to less than fifty thousand. Following the math through, 50,000 members x 100 USD membership fee per year = 5,000,000 in revenue. She states in her letter of support of Plaintiff to leave rule 26 conference that she spends millions producing the content. In being conservative in favor of the Plaintiff's case and for the sake of this question let us set profit from the legitimate side of the business at 2,000,000 and falling. There have been at least 4032 suits most of the earlier ones were joiners naming hundreds of Defendants to save on court fees but keeping with the conservative theme and let us set the number of paying Defendants at 4,000. Most settle instead of being associated with the case for somewhere between 2,500, and 7,500 USD plus lawyer fees. (*Anti-Piracy Copyright Management, aka APCM manual, not provided herein but it can be readily found on the web. Reference to settlement range can be found on page 19*) Remaining conservative and in favor of the plaintiff, let us set the average payout to 4000 USD per John Doe which comes to a grand total of 16,000,000 USD, or just over 5,000,000 USD per year. Less legal expenses of 30%, typical of counsel in lawsuits, Malibu Media takes home more than 3,000,000 in revenue. Said, another way, it appears to be an easy case to prove that this is in fact a significant part if not a far more profitable part than the original base business. Keep in mind, this is a very conservative business case actively attempting not to prove the Plaintiff's highly profitable business model of using the courts and taxpayer money for a significant revenue stream.

2. She continues with a statement that despite sending thousands of DMCA takedown notifications each week, the infringement continues. *Declaration of Colette Fields in support of Plaintiff's motion to take leave of Rule 26 conference. Doc No. 9*

   a. Let us set the number as low as possible. 2000 DMCA takedown notifications per week, according to her own testimony. It has been at least three years. Where are the records of at least 312,000 DMCA takedown notices?
   b. Even in the unlikely event that these notices actually exist in this quantity and Malibu Media freely releases this information to the public, has anybody even spot checked them?

3. Patrick Paige would be the discovery investigator in this case and he too submitted a letter in support of the Plaintiff's motion to take leave of Rule 26 conference. He states that he has extensive knowledge of Peer to Peer (P2P) networks, he has testified as an expert witness, and has never been denied as a result of his expertise. *Declaration of Patrick Paige in support of Plaintiff's motion to take leave of Rule 26 conference. Doc No. 10*

   a. However, it was not disclosed in his testimony that he was removed from active police duty as a result of an arrest in accusation of possession of hydrocodone pills, and that he was a detective primarily focused on pedophile cases. Was the arrest and charges to follow the minor side of things or was he into more nefarious activities? The case is sealed, so we will never know, but it at least calls into question his character on the drug charge.

      i. What about the photos and videos of the Defendant's young child in various activities contained on the hard drives?
      ii. Should the Defendant be concerned given Mr. Paige's dismissal, association with Malibu Media, and former association with a nefarious community? The quality of his business security, if any, has not been disclosed and I am sure there are quite a few people with a score to settle at this point. The last thing the Defendant wants is by no fault of their own to get wrapped up in a data breach by someone who has a score to settle.
      iii. Insurance against data breach and data loss i.e. fully encompassing tech insurance for the acceptance of sensitive information of other persons should be in place and coverages, if any, disclosed.

    b.   There should at least be a standard protective order in place should the Plaintiff require discovery of the Defendant's hard drives and the court deems this person capable of executing that task safely.  Limiting the scope and method of testing.  An example of which is *Malibu Media vs Mike Cuddy Case No. 1:13-cv-02385-WYD-MEH Docket No. 74.* Additional fees, charged daily, would be required to be paid by the Plaintiff for lost wages among other things as a direct result of shutting down the Defendant's Company for the purposes of a hard drive examination regardless of the findings of that examination.  We will also not allow an uncontrolled copy to be made of anything.

4.   Tobias Fieser states in his letter: computer(s) identified on Exhibit A to the Complaint ("Exhibit A") connected to IPP's investigative server in order to transmit a full copy, or a portion thereof, of each digital media file as identified by the hash values as set forth on Exhibit A to the Complaint.  At no point did IPP distribute any of the Plaintiff's copyrighted works. INTERNATIONAL IPTRACKER v 1.5 is designed in such a way so that it is incapable of distributing any content. *Declaration of Tobias Fieser in support of Plaintiff's motion to take leave of Rule 26 conference. Doc No. 11*

Exhibit A lists pieces categorized by SHA1 hash values (40 digits) of the digital media file approximately 256K in size each.  The whole digital media file is on average 400MB.  It has been repeatedly called into question whether or not one encrypted hash of one media file constitutes as proof of infringement.  The ninth circuit says it does not for many reasons.  Tobias Fieser states in his letter than he <u>might</u> have only received a portion of that tiny file.  It could at least be reasonably argued that he received no portion of the file and that it is listed in the Exhibit in error as has been proven in other cases.

a. Which ones are only a portion?
b. How much in size specifically was that portion?
c. How does one not distribute while still participating in the BitTorrent Swarm?
d. Has anybody investigated the 1.5 version of the INTERNATIONAL IPTRACKER software?
   i. What is the revision history, associated fixes, and when did those revisions occur?
e. What was the IP address(s) of the server(s) at the time of collection?
f. What are the IP address(s) of the IPP servers now?
g. Which torrent sites are being monitored?
h. Which media files are being monitored?
i. What research has IPP or Malibu Media done to identify the method of release of their product to the torrent sites?

5. IPP aka Guardaley aka APCM, has not provided any contact information for the Defendant to investigate. Other Defendants have tried track down this company but it appears to be a collection of shell companies with mail forwarders to other companies or representatives with more mail forwarders. They have also been solidly linked to Prenda Law, among others, and their nefarious history with the court system has been quite astounding. They have also repeatedly found to be providing erroneous evidence, this case included. They have also been found to be paid, at least in part, according to Defendant settlements. *Malibu Media vs John Does 1:14-cv-00223-MJG.* This would set the stage for the fabrication of links between readily available public information, IP address and SHA1 Hashes. If these links, or as Tobias would put it, some of the links are fabricated, then that would be a willful attempt to defraud the court system.

   a. Given the clear lack of impartiality and proven nefarious actions historically, why should the evidence and testimony of this company and any of its employees be admissible?

   b. All information of the company interaction with their cases and clients is apparently documented on PODIO, www.podio.com according to the APCM manual page 20. It would be prudent at this point to review the communication of all cases in the US, or at

least this one, to determine if all research and case litigation has been conducted "with
clean hands".

c.  "paragraph 2 in regards to software consultant (i.e., he can talk about software issues),
    & we're hoping the judge won't question his qualifications too much." *APCM Manual
    Page 35.* Why does APCM specifically state in their own manual they hope the Judge
    does not question their software expert qualifications too much?

d.  "IP addresses, the hash tag, the time & date of the infringement, but the most
    important thing we're capturing is that we have a "packet sniffer" (i.e., that captures all
    the network traffic that is passing through the system." *APCM Manual Page 36.* It is
    illegal to use of a packet sniffer on any network that is not solely owned by
    IPP/Guardaley/APCM.  The software should be examined for potential abuse, current or
    former abuse, overall legality, and an examination of why this does not constitute as an
    illegal wire-tap.

e.  The Defendant's identity, should it be revealed, is then shared back to German located
    APCM added to their database via PODIO and whoever else has access to PODIO along
    with an unknown amount of other private information *APCM Manual, Page 12.* Even
    under a court ordered anonymity allowance for the Defendant, restricted to Plaintiff's
    counsel the ISP information is being transmitted to an unknown, and unlicensed to
    practice law, 3rd party with a sophisticated, and uniquely customized, packet sniffer.
    Passwords, and other non-related private information could then be freely collected and
    possibly later sold during and long after this case has been closed.  None of this
    information was disclosed by the Plaintiff.

CONCLUSION:

I am sure there will be more questions that come up naturally during the course of a very basic look into the "evidence" as presented.  The questions outlined herein are designed to shed a honest light into the inner workings of Malibu Media and IPP/Guardaley/APCM for the purposes of validating the source of the claims presented in this suit and any related testimony.  Hopefully the Defendant has submitted enough justification to at least have the court reexamine if not over-turn the allowance of Malibu Media to take leave of a Rule 26 conference.  <u>The Defendant has the right and would like to have the opportunity to at least verify the claims of this suit and their respective sources.</u>

Respectfully submitted by,

John Doe 108.41.235.16 pro se litigant.