UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

JUDGE SULLIVAN

COMPLAINT – ACTION FOR DAMAGED FOR PROPERTY RIGHTS INFRINGEMENT

CIVIL ACTION NO: 15CV-1862 RJS

```
-----------------------------------------------------------------X
JOHN DOE subscriber assigned IP address: 108.41.235.16    :
                                                          :
                    Plaintiff                             :
                                                          :
                                                          :
Vs.                                                       :
                                                          :
MALIBU MEDIA, LLC                                         :
                                                          :
                    Defendant                             :
-----------------------------------------------------------------X
```

**JOHN DOE IN CASE 1:15-CV-01862 COUNTERCLAIM OF FRAUD, DEFAMATION, ABUSE OF PROCESS, ATTEMPTED EXTORTION, EMOTIONAL DAMAGE, ATTEMPTED UNJUST ENRICHMENT, PUNITIVE DAMAGES, AND RACKETEERING UNDER THE RICO ACT**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/3/15

# INTRODUCTION

This is an action for damages against Malibu Media, LLC.  Malibu Media LLC is a pornography purveyor under the trade name X-Art, who has filed suit in numerous venues seeking to extort money from individuals they claim have downloaded pornography from the Internet. The pornography purveyors utilize a technique known as trolling whereby individuals hired by the various pornography purveyors search for Internet protocol (IP) addresses supposedly associated with the use of file sharing software such as BitTorrent.  This is far from accurate, as even office appliances have received DMCA letters.

In any case, once the IP addresses have been harvested, the Malibu Media files suit naming the defendants as John Doe. They then seek to have mass subpoenas issued for the Internet providers associated with the harvested IP addresses in order to obtain the name and address of the owner of the IP address on the date it was harvested.

Initially their tactic was to join many Defendants into one suit to save on filing fees.  This was eventually ruled as abuse of the court system and most courts severed the Defendants leaving Malibu Media the choice to proceed with individual claims should it be necessary.  Recently, Malibu Media LLC began using the court system of the state of New York to file pure bill of discovery lawsuits in which they seek only to extract the names and addresses of the individuals associated with the various IP addresses.

This process requires Malibu Media to take leave, through court allowance, to serve the discovery subpoena upon the Defendant's ISP.  In nearly all cases this has been allowed by the court, with the understanding that the case will proceed to a Rule 26(f) conference.  In reality, once they obtain contact information, Malibu Media begins to shakedown these individuals by telephone. The tactics of Malibu Media clearly indicate that they are not convinced that the individuals they accuse of downloading pornography from the Internet have actually done so.

This is true because they often shake the individual's down for $1,000-$5,000. Malibu Media knows that this amount of money is less than the cost of a defense if a suit was filed. They also know that individuals such as the Plaintiff in this matter are embarrassed to have their names associated with pornography, and therefore, are susceptible to being shaken down. In fact, if the individuals could be proven to have downloaded the pornography unlawfully from the Internet, the pornography purveyors could collect civil statutory damages of $150,000 for a willful infringement, such as they allege, yet they settle for $1,000-$5,000.

If anybody puts up a fight, they just rack up the legal bill with pointless discovery of hard drive examinations and depositions looking for something to claim as a spoliation charge and obtain a default judgement. Sometimes even getting caught in perjury. Repeat as needed until the Defense gives up.

In effect, Malibu Media has developed a new business model using the court system to extort money from individuals who are merely identified by IP address and with no proof whatsoever that they downloaded copyrighted materials from the Internet. By extorting settlements of $1,000-$5,000 Malibu Media has developed a model whereby they can unlawfully gain 10 to 50 times more money than they can by selling access to their pornographic videos.

## PARTIES

1. Plaintiff, John Doe 108.41.235.16, brings this action on his behalf and all others similarly situated. John Doe is a citizen and residing in the Southern District of New York.

2. Defendant, Malibu Media, LLC is a California limited liability company with a principal place of business located at 31356 Broad Beach Road, Malibu, California 90265

## JURISDICTION AND VENUE

3. This matter raises causes of action under both state and Federal law. Because claims under Federal law have been raised, this Court has jurisdiction over this matter pursuant to 28 USC § 1331 and supplemental jurisdiction over all state law claims pursuant to 28 USC § 1367.

4. Venue properly lies in the U.S. Southern District Court for New York, because the matters complained of herein occurred in the Southern District of New York

## FACTS

5. The pornography industry has begun a campaign to shakedown users of file sharing technology such as BitTorrent as well as individuals who have never used any file sharing technology. Often these targets of the pornography industry have had their IP address "spoofed," a process whereby an IP address is forged and made to appear to be an IP address other than the actual IP address of the person using the Internet. Others have been the victims of a compromised home network that has been used by others unbeknownst to the owner of the network.  Furthermore, even if the IP address has been correctly identified, the mere fact of ownership of the IP address does not in any way indicate that the owner participated in an unlawful download of copyrighted material.

6. It has been universally acknowledged in many courts that at least 30% of the owners of IP addresses did not commit any copyright infringement.

7. On information and belief, the industry has hired a company, Intellectual Property Protection, Limited (IPP), to "troll" for BitTorrent users. Trolling involves monitoring certain web sites and Internet locations for BitTorrent activity.  IPP acknowledges they are unable to prove a criminal case, and further have no desire to do so as they are only interested in pursuing settlements.

8. Intellectual Property Protection Limited (IPP) is in part paid according to an "oral fee" contingent basis, which they initiated with the Defendant. The specifics of that understanding, while having been admitted to as existing, has not been released publically. It does however insure IPP is not an impartial third party entity as stated by the Defendant and has a vested interest in making each case seem as large as possible.

9. On information and belief, once an IP address is supposedly identified as using BitTorrent, the IP address is recorded by IPP and forwarded to the pornography purveyors and their attorneys.

10. On information and belief, the Malibu Media and their attorneys then draft nearly identical lawsuits to be filed, naming defendants as John and/or Jane Does and alleging that their IP addresses were identified as downloading pornography. They have historically included a table in evidence called Exhibit C which does not contain films copyrighted by Malibu Media but are extremely offensive in nature designed to embarrass Defendants into settling. Exhibit C has since been rejected by the courts. The lawsuits now include only the Exhibit A and Exhibit B attachments which in table form include the hit date, time, file hash, film title, copyright number, publication date, among other items to make the "evidence" seem as legitimate as possible. The Plaintiff, herein, has proved conclusively Exhibit A, while it looks legitimate enough, is nothing more than willful fraud, as conclusively proven in an earlier motion to strike evidence. Further, this willful fraud has been repeated in at least 4444 other cases dating back over the course of years.

11. Recently, the Malibu Media have begun filing pure bill of discovery lawsuits in New York, asking the New York courts to approve subpoenas from Malibu Media to the Internet service providers associated with the harvested IP addresses requiring the Internet service providers to provide the names and addresses associated with the identified IP addresses.

12. In several cases, even under an anonymous allowance, Malibu Media has published the name of the Defendant anyway. They did so in the associated claims here as well.

13. When the Malibu Media obtains the names and addresses associated with the various IP addresses, they begin contacting the individuals and demanding a settlement, usually in the range of $1,000 to $5,000. As the cases have shifted from Joiner to Individual the initial settlement requests have also been raised to sometimes as much as $20,000 according to the surveyed defense lawyers.

14. On May 4th, John Doe was contacted by their ISP Verizon indicating a discovery subpoena has been submitted on behalf of Malibu Media by their counsel of record Jacqueline Marie James of The James Law Firm 445 Hamilton Avenue, Suite 1102 White Plains, NY 10601.

15. A copy of the complaint was not included. Only a cover letter from Verizon, copy of the subpoena, and an Order and Opinion from Judge Sullivan referencing Judge Ramos.

16. The cover letter from Verizon stated the Defendant has 30 days to submit proof of a motion to quash or Verizon must supply the contact information they have on record to Malibu Media.

17. The Defendant consulted with two regional lawyers listed online under defense for copyright infringement for their advice and approximate cost for drafting a motion to quash. They both stated that was a red herring and it would only be a waste of time and money. They also stated the going rate for settling these types of suits before a discovery subpoena is in the tens of thousands of dollars.

18. The Defendant council is on record referring to opposing counsel of an unrelated case, as "difficult" which supports the Plaintiff position of finding it "difficult" to obtain adequate representation without the feeling of being pressured into settling regardless of the circumstances. The Plaintiff has no proof of post-case windfall sharing of proceeds between opposing counsel, it just felt that was a very real possibility.

19. Not wanting to allow contact information to be released to a known and well documented abuser of due process, not being able to afford an attorney willing to proceed with a motion to quash, or proceeding in the case what-so-ever without settlement being an option, the Defendant had no other choice, given the time frame allowed, but represent himself through the pro-se office.

20. The Defendant filed motions to quash and to proceed anonymously within the same document and supplied a date-stamped copy to Verizon.  Malibu Media supplied an objection within the time frame allowed.  The motion included testimony to the effect the company residing at the address of the IP address had several development machines with an open wireless access point.  The company further complies with all aspects of the Digital Millennium Copyright Act (DMCA) section 512(a).  Which shields them from any unknown infringement during the course of business.  A coffee shop for example.  Judge Richard Sullivan denied both motions but did not issue a ruling on the company's compliance within the narrow DMCA standard.  His order and opinion allowed for renewal without prejudice.

21. The Defendant revised the motions to quash and proceed anonymously in separate documents according to the second court standards outlined in Judge Sullivan's order.  The Defendant also supplied a motion for reconsideration of the Plaintiff's allowance to take leave of rule 26(f). Lastly the Defendant supplied letters explaining all these motions.

22. Judge Hellerstein of SDNY in his order an opinion on July 4th 2015, made it plainly clear that a nearly verbatim complaint, and "evidence" provided was not sufficient for leaving a rule 26(f) to issue a discovery subpoena.

23. The Defendant misunderstood that renewal without prejudice only applied to the motion to proceed anonymously, the motion to quash was already denied outright.  The court read the motion to quash as a reconsideration.  All motions were denied except for the motion to

proceed anonymously.  The motions were all focused upon the "unclean hands" method of the Plaintiff and upon the meritless claims in the complaint and exhibits.  The court found that while the attacks might prove fruitful later in prosecution they did not apply to quashing a subpoena. Judge Hellerstein's order and opinion made a few days before was not included in the notes.

24. The Plaintiff then requested an extension of time serve the subpoena, which was granted.

25. The Plaintiff submitted a letter stating, *inter alia, "after careful investigation of the information provided by the ISP, the Plaintiff has decided to proceed with its claims"* and wished to proceed with a summons supplied by the court under seal in compliance with the order order for anonymity on behalf of the Defendant.  This was granted and an order to supply an amended and redacted complaint to ECF.

26. The Plaintiff submitted a redacted amended complaint nearly identical to the first one in compliance with the order to submit documents under seal.

27. The Defendant was served an **unsealed** copy of the lawsuit in the public lobby of his building which was **strictly forbidden** by the court.  The Plaintiff has supplied screenshots of the live security camera footage of that evening.   This not only provides direct evidence of an unsealed copy but the process server also read the complaint. (*Exhibit D, Page 20-21*)

28. The Plaintiff filed for a second extension of time, an additional 45 days requested.  The court denied that motion as moot.

29. On 8/14/15 at 11:59 PM, The Plaintiff officially failed to complete service within the time frame allowed even with having been given an additional and uninterrupted 45 days to do so.

30. On 8/28/15 the Defendant completed service late by filing the Affidavit of Service on ECF.

31. On 8/29/15 the Plaintiff reached out to opposing counsel via a dedicated email account to provide an audited channel of communication as ordered by Judge Sullivan.

32. On 8/31/15 the Defendant responded using the audited channel of communication attaching a copy of the unredacted affidavit of service.

33. On 8/31/15 the Plaintiff requested an initial settlement offer.  The response was $750.00 x 58 films for a total of $43,500.  Stating legal fees would be waived if agreed to before answering the complaint and payment was received by 9/15/15.  The Plaintiff declined stating a more realistic settlement would be considered should the Defendant be so inclined.

34. Through the course of paragraphs 14 - 33, the Defendant began researching the claims presented by the Plaintiff in preparation for a rule 26(f) conference and found them to be severely deficient as outlined in the preceding motion to strike portions of the amended complaint, the "evidence" contained in Exhibit A in its entirety, and testimonies of Collette Fields, Patrick Paige and Tobias Fieser.  Not only was the "evidence" deficient, but it could clearly be proved to be willfully and fraudulently fabricated.  Exhibit C includes the summarized justification.  It is these motions and collected evidence conclusively proving the nefarious actions of the Plaintiff that supplied the basis for this counterclaim.

35. All motions up to this point clearly stated a fair warning that should the Plaintiff continue with their lawsuit and it negatively impacted business or any related individual needlessly this counter-claim would be submitted.  The plaintiff ignored the multiple warnings, has continued with their lawsuit, violated two direct court orders, and it has negatively affected the Defendant and his company.

36. The the Defendant and the court should take note of Exhibit C and related explanation in the Plaintiff's motion to strike for the evidentiary justification of the counts detailed herein.

## COUNT I: ATTEMPTED VIOLATION OF 18 U.S.C. § 1964, et seq. (RICO)

### LEGAL STANDARD

1961 (1) "racketeering activity" means (A) any act or threat involving ... extortion, or dealing in obscene matter...

1961 section 1951 (relating to interference with commerce, robbery, or extortion)

1961 section 1952 (relating to racketeering)

1961 (4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

1961 (5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

1962 (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

1964 (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, ...

---

37. Count 1 is solely focused upon a reference to a pattern of racketeering activity, namely, filing at least 4444 nearly identical lawsuits throughout the US over the course of 4 years. The repeated acts fraudulent or otherwise predicated in these lawsuits are detailed in Counts II, III, IV, V, VI and VIII within this counterclaim.

38. The Plaintiff and others similarly situated have suffered injury by way of the Defendant's repeated violation of 18 U.S.C. § 1962 for which the Plaintiff should be awarded treble damages in such amount as they can prove along with their reasonable attorney fees or related research costs pursuant to 18 U.S.C. § 1964.

## COUNT II: COMMON LAW FRAUD

### LEGAL STANDARD

1. a representation of material fact,
2. the falsity of that representation,
3. knowledge by the party who made the representation that it was false when made,
4. justifiable reliance by the plaintiff, and
5. resulting injury."

Southern District: *Sawabeh Info. Servs. Co. v. Brody*, No. 11 Civ. 4164 (SAS), 2014 U.S. Dist. LEXIS 1050, at *32 (S.D.N.Y. Jan. 6, 2014); *Corley v. Spitzer*, No. 11 Civ. 9044 (RJS)(KNF), 2013 U.S. Dist. LEXIS 120833, at *23-24 (S.D.N.Y. Aug. 20, 2013).

---

39. Defendants, through their agents, have made material misrepresentations to and/or withheld material information from the Plaintiff and others similarly situated in order to extract money from them.  Specifically, Defendants, through their agents, falsely represented through testimony and "evidence" contained within exhibit A that the Plaintiff and others similarly situated had used BitTorrent to download specific files represented by hash numbers which they claim to be an infallible digital fingerprint of copyright protected pornography owned by Malibu Media.

40. The Defendant has sought the maximum statutory limit of $150,000 in damages for works which sell for pennies on the dollar for year long membership access.  The Defendant has supplied no justification for the value of damages sought, nor pursued any other commonly used means attempting to protect their copyrights.

41. It can also be proven through direct publically available evidence the Defendant through their various agents willfully distributes their copyrighted content in attempt to induce copyright infringement as part of their highly profitable business model (*Motion to Strike, Exhibit C*).

42. A case can be made utilizing the strong circumstantial evidence the Defendant has authorized their agents to release the copyrighted works to the BitTorrent network.  The justification is several titles with release dates on BitTorrent well before the same content was released on their own website.  There is no other way to obtain these files except if it was done from within Malibu Media (*Motion to Strike, Exhibit C*).

43. 21 out of the 58 works listed did not display a copyright symbol according to the works displayed directly from Malibu Media's website, even years after publication.  The Defendant failed to acknowledge, in their pursuit for statutory damages, the copyright symbol on many of the works was not displayed.  This was confirmed again in Plaintiff initiated settlement negotiations.  The Defendant, from all accounts, is a sophisticated litigant, and has attempted to sue for full statutory damages in direct violation of the Copyright Act.  They have done so many times before historically including in cases resulting in default judgments.

44. Once the body of "evidence" was fully investigated it does not represent a single copyrighted item and this had been repeated in many other cases historically.  This trend was investigated in other cases filed around the same time in multiple districts and the results were the same.

45. The Plaintiff is confident that most of the Defendants listed in those cases as well as the courts would not know how to validate the "evidence" as presented and would simply assume it represented something valid.  This is supported by the fact that it appears, through rather extensive research, that nobody has attempted to validate the hash numbers in exhibit A.

46. There is also ample testimony from Malibu Media and IPP detailing out their full and complete understanding of the subject matter leaving no other reasonable explanation other than this was done willfully and on a massive scale.

47. The Defendant, through their agents and others, failed to inform the Plaintiff and others similarly situated that no proof existed that the Plaintiff and/or others similarly situated had

used the Internet to download any pornography.  Further, The Defendant, through their agents and others, threatened the Plaintiff and others similarly situated with enhanced civil fines when, in fact, no copyrighted items were listed in exhibit A.  A theme that extends to all cases investigated by the Plaintiff.

48. The Plaintiff and others similarly situated relied to their detriment upon the material misrepresentations and/or material omissions made by Defendants, through their agents and others, and suffered damages for which they should be compensated.

## COUNT III: FRAUD MISREPRESENTATION

### LEGAL STANDARD

1. "a misrepresentation or a material omission of fact
2. which was false and known to be false by defendant,
3. made for the purpose of inducing the other party to rely upon it,
4. justifiable reliance of the other party on the misrepresentation or material omission, []
5. injury," and
6. damages.

*Haining Zhang v. Schlatter*, No. 12 Civ. 1793(ALC) (GWG), 2013 U.S. Dist. LEXIS 138968, at *29 (S.D.N.Y. Mar. 13, 2013).

49. The Defendant's actions as detailed in Count II paragraphs 34 - 42 with a focus on the willful misrepresentation of the items in Exhibit A amplified not only in the original and amended complaints but also within the testimony of Collette Fields, Patrick Paige, and Tobias Fieser.

## COUNT IV: DEFAMATION LIBEL

### LEGAL STANDARD

1. Defendant made a statement of fact that is:
2. False;
3. Published to a third party without authorization or privilege;
4. Either constitutes defamation per se or which causes special damage; and
5. The defendant's fault in publishing the statement amounts to at least negligence.

*Caruso v. City of New York*, No. 06 Civ. 5997 (RA), 2013 U.S. Dist. LEXIS 138643, at *77 (S.D.N.Y. Sept. 26, 2013).

---

50. Defendants, by and through their agents and others, have falsely accused the Plaintiff and others similarly situated of illegally downloading pornography from the Internet.

51. Defendants have published their false allegations against the Plaintiff and others similarly situated by forcing the Plaintiff to disclose the existence of this suit to third parties and an unknown number of other people related to the forced disclosure.

52. The Defendant hired a known process service violator Raed Ibrahim, fresh from a two month license suspension ending July 14th 2015 and $1,600 dollar fine.  Which included six counts of "sewer service" and/or false affidavits of service, two counts of traverse hearing reporting violations, and one count of lack of fitness (*http://www1.nyc.gov/assets/dca/downloads/pdf/about/sa_Raed_Ibrahim_1326602.pdf*).

53. The Defendant either knowingly or in complete negligence gave this person sensitive personal contact information, an unsealed copy of a court sealed document, and sent him to the Plaintiff's home address.

54. The Defendant further violated a court ordered seal and served the Plaintiff in a public place with an unsealed copy of the lawsuit (*Exhibit D, Page 20*).  The process server was captured on security camera footage reading the court ordered sealed lawsuit in the Plaintiff's public lobby.

55. Defendants acts have caused the Plaintiff and others similarly situated to suffer damage to their reputation for which they should be compensated.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### LEGAL STANDARD

1. extreme and outrageous conduct;
2. intent to cause, or disregard of a substantial probability of causing, severe emotional distress;
3. a causal connection between the conduct and injury; and
4. severe emotional distress.

*Biswas v. City of New York, 12 Civ. 3607 (JGK), 2013 U.S. Dist. LEXIS 141029, at *75 (S.D.N.Y. Sept. 30, 2013).*

56. As part and parcel of their plan and scheme, the Defendant herein attempted to use the distress felt by the Plaintiff and others similarly situated to fraudulently extract money from them. Many fell victim to this scheme.  The acts described herein above taken by Defendant against the Plaintiff and others similarly situated are outrageous and offend notions of common decency within the community.

57. The Plaintiff and others similarly situated suffered extreme emotional distress as a result of Defendant's acts described herein above for which they should be compensated.

## COUNT VI: ATTEMPTED UNJUST ENRICHMENT

### LEGAL STANDARD

1. Defendant benefitted;
2. At the Plaintiff's expense; and
3. Equity and good conscience require restitution.

*LIBOR-Based Fin. Instruments Antitrust Litig.*, 11 MD 2262 (NRB), 2013 U.S. Dist. LEXIS 120674, at *74-75 (S.D.N.Y. Aug. 23, 2013)

---

58. The fraudulent behavior and tactics employed by the Defendant herein above described resulted in the Defendant obtaining money to which they are not entitled from many of their victims in other lawsuits historically.  Simply because the fabricated fraudulent evidence provided appeared legitimate enough to the common person and the subject matter being pornographic in nature many of their victims felt it was easier to settle regardless of guilt.

59. Defendant's unlawful acts described herein above have led to the Defendant being unjustly enriched, and therefore, The Defendant should be required to disgorge all funds so obtained from members of their previous settlements who have exhibits similar to the one outlined herein.

60. Further the Defendant should compensate the Plaintiff for having to investigate this knowingly fraudulent "evidence" in the first place.

# COUNT VII: PUNITIVE DAMAGES

### LEGAL STANDARD

1. Punitive or exemplary damages may be awarded where;
2. the defendant's conduct amounts to such gross, wanton or willful fraud, dishonesty, or
3. malicious wrongdoing as to involve a high degree of moral culpability, making it appropriate to
4. deter the defendants from engaging in similar conduct in the future and to induce the victim to take action against the wrongdoer

*Whitney v. Citibank*, N.A., 782 F.2d 1106, 1118 (2d Cir. 1986) (citing *Walker v. Sheldon*, 10 N.Y.2d 401, 404–05 [1961]).

_____

61. The Defendant's unlawful acts described herein were taken with actual malice and/or recklessly in disregard for the Plaintiff and others' similarly situated rights and property.

62. The Plaintiff and others similarly situated are entitled to an award of punitive damages in such amount as jury may find just at trial of this matter.

# COUNT VIII: ABUSE OF PROCESS

### LEGAL STANDARD

1. Regularly issued process, either civil or criminal;
2. Intent to do harm without excuse or justification; and
3. In order to obtain a collateral objective that is outside the legitimate ends of the process.

*Hershey v. Goldstein*, No. 12-Civ. 3853 (PAE), 2013 U.S. Dist. LEXIS 51226, at *64 (S.D.N.Y. Apr. 9, 2013)

_____

63. The Defendant knowingly distributed their own soon to be copyrighted films to the BitTorrent network for the sole purpose of issuing lawsuits for copyright infringement and kept repeating this action over the course of years.

64. The Defendant knowingly issued a lawsuit naming the Plaintiff for alleged infringement of 58 films that the Defendant or one of their agents knowingly uploaded to the BitTorrent network in the first place.

65. The Defendant knowingly issued a lawsuit naming the Plaintiff after actively defending the need for and then executing a court ordered discovery subpoena, and "*after careful consideration*" filing a letter to proceed with a lawsuit for alleged infringement of 58 films.

66. The Defendant knowingly issued an "*Exhibit A*" which lists the allegedly infringed film with "*Hit Dates*" well before the copyright registration date and then claimed statutory damages.

67. The Defendant knowingly listed films in "Exhibit A" by hash value, claimed without any proof the Plaintiff uploaded or otherwise distributed one or more bits of those files, and further knew the file hashes do not represent a copyrighted file in part or in whole or even one that is substantially similar.

68. The Defendant knowingly avoids discovery or rule 26(f) conferences with extensions of time for the sole purpose of negotiating a settlement, and will keep that process going as long as possible until their victim eventually gives up any pays the extortion regardless of guilt.  The Defendant has already requested two extensions of time.

69. The Defendant knowingly crafts their lawsuit and supporting documentation especially "*Exhibit A*" to look as convincing as possible, when in reality it contains nothing copyrighted.  The common person would miss many of the finer points raised in the Plaintiff's motion to strike, *inter alia*, the evidence contained in "*Exhibit A*".

70. The Defendant has repeated the actions listed herein at least 4444 times.

71. The abuses outlined herein caused the Plaintiff to spend unnecessary resources,  to incur greater costs post litigation for insurance, and spend needless time Defending a complaint which should never have been brought to court in the first place.

## CLASS ALLEGATIONS

72. Plaintiff cannot adequately prosecute a class action suit being classified as a pro se litigant. References to other individuals in similar situations made throughout the body of this counterclaim are not expressly included in this counterclaim what-so-ever.  Rather, they have been included strictly as a reference point to prove the Defendant's actions are not isolated in nature.  The Plaintiff reserves the right to hire an attorney to pursue a class action lawsuit at a later date should such action be warranted.

## SEVERABILITY

73. The Plaintiff, being classified as a Pro Se litigant without any formal legal background, has researched each of the claims presented herein to the best of his ability and has determined they apply to this case as presented and accordingly justified.  As such, and with respect to the court's overall case management strategy, the Defendant will immediately yield to the court's considerable legal expertise with any request **by the court** to amend or strike, any count or paragraph without opposition even without a motion from opposing counsel to do so under the assumption that the item(s) in question were either drafted, or the legal standard, was applied in error.  The Plaintiff maintains the full right to oppose any motion by the Defendant according to civil procedure.

**WHEREFORE**, Plaintiff, John Doe 108.41.235.16, individually demands as follows:

1. That Defendants be summoned to appear and answer;

2. Trial by jury on all issues so triable;

3. Authorization for a RICO investigation by the office of the Attorney General for the purposes of proceeding with a potential prosecution of criminal charges for racketeering;

4. Immediate suspension of all cases, countrywide, currently in progress by Malibu Media;

5. Permanent revocation of Raed Ibrahim's process license #1326602;

6. Judgment on all Counts of this Complaint against Defendant;

7. Award of damages to be determined by a jury and trebled;

8. Award of prejudgment and postjudgment interest at the maximum rate allowed by law;

9. Leave to amend this Complaint as the Defendant's case develops; and

10. Any and all other relief to which the Plaintiff may appear reasonably entitled.

Respectfully,

John Doe 108.41.235.16 pro se litigant

EXHIBIT D:

*Video footage of the Plaintiff's servicer of process reading the court ordered sealed complaint.*





